| | |
|---|---|
| **JOSEPH B. LAMBERT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND ORDER** |
| ) | |
| **MECKLENBURG COUNTY,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the "Defendant's Motion for Summary Judgment" (document #18) and "Memorandum in Support..." (document #23), both filed May 22, 2006; and Plaintiff's "Brief in Opposition to Defendant's Motion for Summary Judgment" (document #26) filed July 25, 2006. Defendants filed their "Reply Brief in Support of Defendant's Motion for Summary Judgment" (document #31) on August 25, 2006.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Defendant's Motion for Summary Judgment, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action seeks damages and equitable relief for gender-based disparate treatment, sexual harassment, retaliation, and unequal pay, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII") and state public policy, and a state law claim for disparate pay under the North Carolina State Personnel Act.

A. **Factual Background**[1]

The Plaintiff has been employed by Defendant, the Area Mental Health Authority ("AMHA") of Mecklenburg County ("County") since May 26, 1993, as an Accounting Technician II in the Accounts Receivable area of the Financial Services Division. Plaintiff remains employed in essentially the same capacity now reclassified as a Fiscal Support Assistant III. Plaintiff has a Bachelor's degree in Business Administration coupled with 12 credit hours toward an MBA with prior experience in the accounting field. He has been responsible for processing bills of payment by Medicaid, Medicare, private insurance, self-pay and County funding sources. The Plaintiff alleges discrimination based on gender, sexual harassment followed by retaliation through lack of promotions, and pay disparity.

Plaintiff contends that there is a "culture of female power" in the Financial Services Division of the AMHA. After applying for two new positions, Plaintiff believes the application and interview process was not open and neutral and favored less qualified female candidates. Plaintiff believes the County discriminated against him when they failed to promote him based solely on his gender. Plaintiff also believes the County retaliated against him through lack of advancement and disparate pay. Even viewing the facts in light most favorable to the Plaintiff, however, he has failed to raise an issue of material fact as to any of his claims sufficient to survive the Defendant's Motion for Summary Judgment.

---

[1]Although the undersigned has considered all of the information presented by the Plaintiff, only the alleged facts relevant to his claims in this lawsuit have been included in this section. For example, the Plaintiff provided the Court with information about another position filled by a female in 2005 in which Plaintiff was not selected. Defendant has shown Plaintiff was not selected because he did not apply for this position. Such "facts" have no relevance to claims under Title VII.

### 1. **Vernell Miller**

Vernell E. Miller worked as the Plaintiff's supervisor until September 2004. Ms. Miller was not part of the interview process for positions for which Plaintiff applied during 2003. On or about April or May 2003, Ms. Miller apparently commented in a meeting that Plaintiff had "hit it" with another employee. Plaintiff believed this comment to be a colloquialism for an assertion that Plaintiff had sexual intercourse with another employee. Plaintiff admitted in his testimony that Ms. Miller treated both men and women badly without regard to gender.

### 2. **Fran R. Neely**

Ms. Neely served as one of the AMHA hiring managers on the interview panel for the Accounting Technician I positions in question. Ms. Neely was unaware of Plaintiff's previous complaints against Defendant prior to the selection of other candidates to the Accounting Technician I position.

### 3. **James H. Hamm**

Mr. Hamm served as one of the AMHA hiring managers on the interview panel for the Accounting Technician I positions in question. Mr. Hamm was also unaware of Plaintiff's previous complaints against Defendant prior to the selection of other candidates to the Accounting Technician I position.

### 4. **Crystal McQueen**

Crystal McQueen was initially hired by AHMA as an Accounting Technician II in 2003 with an MBA and pertinent work experience. Later, she was chosen for an Accounting I Technician position over Plaintiff due to her superior education and relevant experience. Plaintiff believes Ms. McQueen to be a comparator. Ms. McQueen received a higher salary than Plaintiff due to her

specialized knowledge, education, work experience, and previous salary, and the difficulty Defendant encountered in filling the position.

### 5.    Veronica Uche-Orji

Veronica Uche-Orji has a degree in journalism and previously worked with the Budget and Accounts Payable area for one year prior to working in the Financial Department. Ms. Uche-Orji was chosen for an Accounting I Technician position over Plaintiff based on her superior experience.

### 6.    Adrienna Harris

Adrienna Harris was employed as an Accounting Technician II with AMHA since August 2002.   She holds a double degree in Accounting and Management Information Systems with significant database experience.  Ms. Harris' salary was higher than  Plaintiff's based on her education, extensive experience and previous $54,000 annual salary.

### 7.    Jeraldine Gillespie

Plaintiff believes Jeraldine Gillespie to be a comparator.  Ms. Gillespie has worked in the same position as Plaintiff since she was hired in September 1999.  Ms. Gillespie and Plaintiff had the same annual salaries and were the highest paid Accounting Technician IIs in their department. For certain periods of time Ms. Gillespie was paid more than Plaintiff due to the difference in their employment anniversary dates of September and December when they each receive their annual pay increases, respectively.

### B.  Procedural Background

On May 13, 2004 the Plaintiff filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

On December 22, 2004, the Plaintiff filed a timely Complaint in this Court, alleging claims for disparate treatment, sexual harassment and retaliation in violation of Title VII; a violation of the Equal Pay Act; and a state law claim for violation of the North Carolina Personnel Act.

On May 22, 2006, the Defendants filed their Motion for Summary Judgment, which has been fully briefed as set forth above and is, therefore, ripe for determination.

## II.  DISCUSSION OF CLAIMS

### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848, 850 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083, 1089 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

Regarding the Plaintiff's state public policy claim, North Carolina courts "look to federal decisions [in Title VII cases] for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." N.C. Dept. of Correction v. Gibson, 308 N.C. 131, 136, 301 S. E. 2d 78, 82 (1983). Accord Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995); and Phillips v. J.P. Stevens & Co., Inc., 827 F. Supp. 349, 353 (M.D.N.C. 1993) ("The public policy of North Carolina expressed in N.C.G.S. § 143-422.1 et seq. is essentially identical to the public policy articulated in Title VII").

Accordingly, the undersigned will apply the elements and paradigm of proof established for Title VII claims to determine the Plaintiff's state public policy claims as well.[2]

## B.  **Title VII and State Public Policy Claims**

### 1.  **Disparate Pay**

At the outset, it is well established that Title VII requires that a person bringing a claim under Title VII file a Charge of Discrimination with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1). Failure to meet this requirement results in an untimely claim which will be procedurally barred for failure to exhaust administrative remedies. Equal Employment Opportunity Commission v. E.I. duPont Nemours and Co., 516 F.2d 1297, 1299

---

[2]Thus, for practical purposes, the Plaintiff's state law discrimination claim is being treated as part of the Plaintiff's Title VII claims.

(1975) Further, a plaintiff has not exhausted his administrative remedies unless he has actually raised a specific claim with the EEOC. In other words, a plaintiff's claims in his judicial complaint must be reasonably related to his EEOC charge and be expected to follow from a reasonable administrative investigation. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).

As noted above, the Plaintiff did file a timely Charge of Discrimination with the EEOC; however, he did not assert his disparate pay claim. Accordingly, the undersigned finds that summary judgment on this unexhausted claim is proper upon these procedural grounds alone. Accord Miles, 429 F.3d at 492; and Adams v. Giant Food, Inc., 225 F. Supp. 2d 600, 604–05 (D. Md. 2002) (granting summary judgment for the defendant for the plaintiff's failure to exhaust administrative remedies where plaintiff checked the box marked "retaliation," but made no allegation of retaliation in his EEOC charge narrative).

2. **Gender Based Disparate Treatment**

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a)(1). Further, Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

In order to prove a Title VII claim, an employee may proceed under ordinary principles of

proof using direct or indirect evidence, or under the paradigm for indirect proof of employment discrimination set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Evans v. Technologies Applications & Service Co.</u>, 80 F.3d 954, 959 (4th Cir. 1996), <u>citing</u> <u>Goldberg v. B. Green & Co.</u>, 836 F.2d 845, 848 (4th Cir. 1988). To overcome a summary judgment motion based upon direct or indirect evidence of discrimination, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." <u>Brinkley v. Harbour Recreation Club</u>, 180 F. 3d 598, 607 (4th Cir. 1999), <u>quoting</u> <u>Goldberg v. B. Green & Co., Inc.</u>, 836 F.2d 845, 848 (4th Cir. 1988). In other words, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." <u>Id.</u>, <u>citing</u> <u>Fuller v. Phipps</u>, 67 F.3d 1137, 1142 (4th Cir. 1995).

In this case, the Plaintiff has submitted no direct evidence of gender discrimination in AMHA's decisions not to promote him. However, as noted, in the absence of such evidence, "the plaintiff may nevertheless proceed under <u>McDonnell Douglas</u>." <u>Id.</u>

Generally speaking, under <u>McDonnell-Douglas</u>, if the employee establishes a prima facie case of illegal discrimination, then the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its employment decision. 411 U.S. at 802. If the employer does so, the presumption of discrimination "drops from the case" and the employee must demonstrate that the employer's stated reason for its action was in fact a pretext for improper discrimination. <u>Id</u>. at 804.

The Supreme Court has made clear that the plaintiff at all times "bears the ultimate burden of proving ... intentional discrimination." <u>Runnebaum v. NationsBank of Maryland</u>, 123 F.3d 156,

164 (4th Cir. 1997) (en banc), citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993) (holding that a prima facie case plus disbelief of employer's asserted justification for employment action is not necessarily sufficient to establish a violation and that, in such cases, summary judgment is appropriate unless the plaintiff presents adequate evidence that the employer unlawfully discriminated). However, in Reeves, the Supreme Court held that:

> a plaintiff's prima facie case, combined with sufficient evidence to
> find that the employer's asserted justification is false, may permit the
> trier of fact to conclude that the employer unlawfully discriminated.
> This is not to say that such a showing by the plaintiff will always be
> adequate to sustain a jury's finding of liability.

530 U.S. at 147-48 (emphasis added). Accord Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000) ("In Reeves the Supreme Court held that when a plaintiff establishes a prima facie employment discrimination case and that his employer's explanation is pretextual, this does not automatically create a jury question, but it may do so.")

In order to establish a prima facie Title VII claim in context of a failure to promote, a plaintiff must show that (1) he was within a class of protected persons; (2) he applied for a job; (3) he was qualified for the job; and (4) another person was hired for the position. See Evans, 80 F.3d at 959-60.

Although Title VII was specifically implemented to end unlawful discrimination against traditional victims of discrimination in the workplace, such as women and racial minorities, it has grown to protect men as well. See Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682 (1983) (Title VII's prohibition of discrimination "because of ....sex" protects men as

well as women).

Applying these principles to the facts of this case, Plaintiff is within a protected class of persons and the record taken in the light most favorable to him establishes that he applied for two promotions. It is undisputed that Plaintiff was considered for these two jobs, but that female employees were awarded these positions. Accordingly, he has satisfied the first, second and fourth elements of a prima facie case.

However, even considering the evidence in the light most favorable to the Plaintiff, he has failed to establish that he was qualified for the positions he sought: positions which required college degrees, accounting experience, and skills the Plaintiff did not possess. Rather than supporting the Plaintiff's claims of discrimination, the evidence in this case can lead a fact-finder to only one reasonable conclusion: the Defendant hired and promoted based on specific criteria and selected employees in each employment action relevant to this action who had qualifications and/or experience superior to the Plaintiff's.

The Plaintiff offers only his own opinion that he was the most qualified for a higher position. Such unsupported opinions, however, are plainly insufficient to create a prima facie case of discrimination. See Tinsley v. First Union National Bank, 155 F.3d 435, 444 (4th Cir. 1998) (plaintiff's affidavits from co-workers and customers – who thought plaintiff was doing "a good job" – immaterial, because it is the perception of the decision-maker that is relevant); and Evans, 80 F.3d at 959 (plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination").

In other words, it is not the Plaintiff's impression regarding his qualifications but, rather, the "perception of the decision-maker that is relevant to the determination of whether discrimination

in the selection process occurred. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); see also

McDougal-Wilson v. Goodyear Tire and Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006)

("Plaintiff's perception of her own experience, performance, and skills is not relevant.  It is the

perception of the decision-maker that counts."). Plaintiff's "unsubstantiated allegations and bald

assertions concerning [his] qualifications and the shortcomings of [his] co-workers" are simply

insufficient to establish pretext and survive summary judgment.  Evans at 960-61.

Even assuming Plaintiff has shown a prima facie case of discrimination, the County has

offered evidence that the Plaintiff was not promoted because there were other, better qualified,

candidates for the positions. In other words, the County has clearly "articulate[d] some legitimate,

non-discriminatory reason[s] for its employment decision[s]." McDonnell-Douglas,  411 U.S. at

802. For the same reason that the Plaintiff cannot establish a prima facie case of gender

discrimination, he has also failed to rebut the County's stated non-discrimination purpose and

therefore to carry his ultimate burden of establishing that he was not promoted because of his

gender.

Finally, the Fourth Circuit has made clear that Title VII claims are "not a vehicle for

substituting the judgment of a court for that of the employer."  Hawkins v. PepsiCo, Inc., 203 F.3d

274, 281-82 (4th Cir. 2000), cert. denied, 531 U.S. 875 (2000), quoting Jiminez v. Mary

Washington College, 57 F.3d 369, 377 (4th Cir. 1995).  In order to carry out its business, the

Defendant must be able to supervise, review, criticize, demote, transfer, promote, discipline and hire

employees based on its business judgment and perceived requirements - which is clearly all that

occurred in the employment actions about which the Plaintiff complains.  Hawkins, 203 F.3d at

281-82 quoting Johnson v. Merrell Down Pharms., 965 F.2d 31, 34 (5th Cir. 1992); see also Rowe

v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000) (recognizing the "importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization").

### 3. Hostile Work Environment Based Upon Sex

Applying the McDonnell-Douglas proof paradigm to establish a prima facie case of sexual harassment based on a hostile or abusive work environment, a plaintiff must prove that the offending conduct: "(1) was unwelcome, (2) was based on [his] sex, (3) was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment, and (4) was imputable to [his] employer." Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003) (citations omitted).

Regarding the second element of a claim for a sexually hostile work environment, the critical inquiry is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id., quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998). A trier of fact may find discrimination where "victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility ... in the workplace." Oncale, 523 U.S. at 80.

Concerning the third element of a hostile work environment claim – proof of conduct sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment – a court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." Harris, 510 U.S. at 23. "This standard is designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Ocheltree, 335 F.3d at 333, quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations omitted). See also Hartsell v. Duplex Prod., Inc., 123 F.3d 766, 773 (4th Cir. 1997) ("there is no allegation that Hartsell was inappropriately touched, propositioned, flirted with, taunted, or even ogled"); Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996) (listing cases involving infrequent, isolated incidents in which courts have held harassment insufficiently severe or pervasive as a matter of law). However, this standard does protect "work[ers]... from the kind of ... attentions [from co-workers of the opposite sex] that can make the workplace hellish." Ocheltree, 335 F.3d at 333 (citations omitted). Finally, as to the fourth element, where an employee is harassed by a coworker, "the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it," and where the employee is harassed by a supervisor, "an employer may be found vicariously liable." Id. at 333-34.

Applying these legal principles to the facts of this case, and taking the evidence in the light most favorable to the Plaintiff, he has failed to establish a Title VII claim for a hostile work environment based on sex. Looking to the first step in the analysis, the Plaintiff has asserted that the conduct was unwelcome and the undersigned has no reason to doubt this.

Plaintiff's claim of harassment still fails as a matter of law because the conduct of which he complains is not based on his sex (the second element) and certainly was not sufficiently severe to affect the terms and conditions of Plaintiff's work environment (the third element). First, according to Plaintiff's own testimony, Ms. Miller treated both men and women badly without

regard to gender. See Brown v. Henderson, 257 F.3d 246, 254 (2d Cir. 2001) ("[i]n absence of evidence suggesting that a plaintiff's sex was relevant, the fact that both male and female employees are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to their sex."); and Pasqua v. Metro. Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996) (rejecting Title VII claim arising out of rumors of a workplace affair, where both male and female employee were the subject of the rumors).

The Plaintiff has also clearly failed to establish the third element of a hostile work environment, that is, the evidence taken in the light most favorable to the Plaintiff does not show under prevailing Fourth Circuit authority that the conduct was so severe or pervasive as to create an abusive work environment in violation of Title VII. First, it is clear from the record and allegations that the conduct was infrequent. The Plaintiff has worked for the Defendant for more than thirteen years, most of which is no way implicated in the actions about which he now complains. Nor, second, does the severity of the conduct even come close to the level of actionable conduct in the Fourth Circuit. Accord Dwyer v. Smith, 867 F.2d 184, 187-88 (4th Cir. 1989) (affirming directed verdict in Title VII case even where evidence showed that female police officer was subjected to pornographic material placed in her station mailbox and to other officers' sexually explicit conversations); and Hartsell, 123 F.3d at 773-74 (finding the following conduct not sufficiently severe or pervasive: comment that every female in the office had cried like a baby, inappropriate comment upon seeing a buxom woman in company magazine, asking a woman whether she would be a "mini van driving mommy" or "be a salesperson and play with the big boys," statement that a woman should go home and fetch her husband's slippers "like a good little wife," among other comments and conduct not considered gender-specific).

14

Having concluded that the Plaintiff failed to establish that gender-based behavior created an abusive work environment, it is unnecessary to consider the final element of the claim, that is, whether there was a basis for imputing the alleged hostile work environment to the Defendant.

In short, the evidence taken in the light most favorable to the Plaintiff fails to show behavior that was based on his gender or that was sufficiently egregious to create an abusive work environment. Accordingly, the Defendants' Motion for Summary Judgment as to the Plaintiff's Title VII hostile work environment claim must and will be granted.

**4. Retaliation**

In addition to prohibiting harassment or discrimination in the workplace on the basis of race, religion, or gender, Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against employees who attempt to enforce rights under the Act. 42 U.S.C. § 2000e-3(a).[3] To establish a prima facie case of retaliation in violation of Title VII or the ADEA, an employee must show that: 1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a sufficient causal connection existed between the protected activity and the adverse action. McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991), citing Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985), abrogated in part

---

[3] Title 42 U.S.C. §2000e-3(a) specifically provides as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (applying same standard to retaliation claim under Title VII and ADEA). See also Hopkins, 77 F.3d at 754; and Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).

Generally, once a plaintiff has made the required prima facie showing, the burden shifts to the employer to produce a "legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation raised by the prima facie case." Ross, 759 F.2d at 365, citing Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir. 1980).

If the employer satisfies this burden of production, "the employee bears the ultimate burden of proving retaliation by demonstrating that the employer's proffered reason is pretextual" and that the real motive for the employment action was retaliation. Id., citing Womack, 619 F.2d at 1296. Accord St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993).

Essentially, to prove retaliation a plaintiff must establish that the adverse action would not have occurred "but for" the protected activity. Id. at 365-66. "A causal relationship requires more than simple coincidence. Causation requires [that] the employer's action be the consequence of the protected activities and of nothing else." Bray v. Tenax Corp., 905 F. Supp. 324, 328 (E.D.N.C. 1995).

The Plaintiff is not required to establish the validity of the underlying allegations of a Title VII violation; nonetheless, in order to establish a retaliation claim, "the plaintiff must believe in the validity of the claim, and that belief must be reasonable." Childress v. City of Richmond, 907 F. Supp. 934, 940 (E.D. Va. 1995), aff'd 134 F.3d 1205 (4th Cir. 1998) (*en banc*), cert. denied, 118 S.Ct. 2322 (1998). Accord Mayo v. Kiwest Corp., 898 F. Supp. 335, 337 (E.D.Va. 1995).

The Plaintiff clearly engaged in "protected activity" when he filed his complaints with the County and the EEOC. See 42 U.S.C.A. § 2000e-3(a) (defining "protected activity" as "participating in an ongoing investigation or proceeding under Title VII, or . . . opposing discriminatory practices in the workplace" and defining "participation" as "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII"). Accord Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 259 (4th Cir. 1998).

The Supreme Court has recently addressed what classes of actions may constitute adverse action under Title VII's anti-retaliation provision – holding that actionable retaliation is not limited only to "ultimate employment decisions" affecting the terms and conditions of employment. Burlington No. & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2410 (2006). In Burlington, the Court held that in order to establish an actionable adverse action, a plaintiff must show only that a reasonable employee would have found the challenged action materially adverse," that is, likely to "'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" Id. at 2415 (quotations omitted). Affording him the benefit of the broader Burlington standard, the Plaintiff has shown that being denied a promotion was an adverse action.

Even taking the facts in the light most favorable to the Plaintiff, however, no reasonable fact-finder could conclude that the evidence in this case establishes a sufficient causal connection between the protected activity and the adverse action. Plaintiff contends that he has been retaliated against for filing prior charges of discrimination dating back to 1995 and 2002, and for complaining about Ms. Miller's alleged sexual comment in August 2003. The evidence is uncontroverted, however, that the decision-makers for the 2004 promotion decisions at issue (Ms. Neely and Mr.

Hamm) had no knowledge of any protected activity - a clear failure to establish a. causal connection between his complaints and the Defendant's decisions not to promote him. <u>Accord</u> <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse negates any inference that a causal connection exists."). Moreover, where purported adverse employment actions occur both before and after the "protected activity" a Plaintiff must establish a specific causal connection with the <u>post</u> protected activity employment action - evidence of which is utterly absent in this case. <u>Accord</u> <u>Thompson v. Potomac Electric Power Co.</u>, 312 F.3d 645, 651 (4th Cir. 2002) ("The district court rightly found that the continuation of the alleged adverse action after the filing of a discrimination complaint did not, without more, support [plaintiff's] prima facie burden of showing causation.").

For these reasons, the Defendant's Motion for Summary Judgment on the Plaintiff's retaliation claim will also be <u>granted</u>.


**C.  <u>Equal Pay Act Claim</u>**

To establish a prima facie case under the Equal Pay Act, the Plaintiff bears the burden of showing that he (1) receives lower pay than a female co-employee; (2) for performing work substantially equal in skill, effort and responsibility under similar working conditions.  <u>Strag v. Board of Trustees, Craven Community College</u>, 55 F.3d 943, 948 (4th Cir. 1995) (affirming summary judgment for community college on female instructor's Equal Pay Act claim); <u>Bartges v. University of North Carolina at Charlotte</u>, 908 F. Supp. 1312 (W.D.N.C. 1995), aff'd, 94 F.3d 641 (1996) (granting university's motion for summary judgment on female coach's Equal Pay Act claim).  In comparing wage rates by gender, "the comparison...must be made on an individual

basis...factor by factor [with a particular] [fe]male comparator." [R]andom comparisons demonstrating disparities in treatment may be insufficient to draw a prima facie inference of discrimination." Reece v. Martin Marietta Technologies, Inc., 914 F.Supp. 1236, 1240 (D. Md. 1995).

The Equal Pay Act exempts from its coverage any pay "differential based on any other factor other than sex." 29 U.S.C. § 206(d). The Fourth Circuit Court of Appeals has interpreted this statutory exemption broadly to encompass differences based on the employees' educational backgrounds and relevant experience, training or ability, among other criteria. See e.g. Equal Employment Opportunity Commission v. Aetna Ins. Co., 616 F.2d 719, 725 (4th Cir. 1980) (affirming judgment for employer because pay difference based on differences in employees' backgrounds and relevant experience). And, in upholding a pay disparity based on these factors in Aetna Ins. Co., the Court also recognized that "[a]n element of subjectivity is essentially inevitable in employment decisions; provided that there are demonstrable reasons for the decision, unrelated to sex, subjectivity is permissible." Id. at 726.

Other courts have found additional factors to be permissible bases for pay disparities under the Equal Pay Act, including educational degrees and attainment, the marketplace value of skills of a particular individual, an employee's prior salary history, and any additional responsibility taken on by an employee. See Cullen v. Indiana University Bd. Of Trustees, 338 F.2d 693, 702-03 (7th Cir. 2003) (affirming summary judgment in favor of university employer, concluding that salary differential was based on factors other than gender); Dey v. Colt Construction, 28 F.3d 1446, 1462 (7th Cir. 1994) (additional formal education bona fide reason for paying higher wages); and Reece v. Martin Marietta Technologies, Inc., 914 F. Supp. 1236, 1241 (D. Md. 1995) ("factor other than

sex" exception to Equal Pay Act encompasses "differences based on experience, training or ability"). See also Pettiford v. North Carolina Department of Health and Human Services, 228 F. Supp. 2d 677, 688 (M.D.N.C. 2002) (pay differential that resulted from lateral transfer and prior raises based on factors other than sex).

Plaintiff contends that Ms. Harris and Ms. Gillespie were paid higher salaries for the same position without justification. To the contrary, the Defendant has demonstrated multiple factors justifying the higher salary afforded Ms. Harris, including her superior education (a double degree in Accounting and Management Information Systems) and her significant database experience. Additionally, the record shows that any temporary difference in pay between Plaintiff and Ms. Gillespie was due entirely to the difference in the dates of their annual evaluations and pay increases. This difference in evaluation dates is "a factor other than sex" that bars an Equal Pay Act claim. 29 U.S.C. § 206(d)(1). Accord Equal Employment Opportunity Comm'n, 616 F.2d at 722 (citing as an acceptable basis for salary differential fact that higher paid male employee was hired more recently, which placed him on a different salary system).

In short, because the record taken in the light most favorable to the Plaintiff establishes that any disparity in his salary vis-a-vis female comparators was not based on gender, the Defendant's Motion for Summary Judgment will also be granted as to the Plaintiff's Equal Pay Act claim.


### D. **Personnel Act Claim**

Chapter 126 of the North Carolina General Statutes, entitled the "State Personnel Act "("SPA"), establishes the State Personnel System, which includes County employees. N.C.G.S. § 126-16 prohibits employment discrimination.

Under the SPA, the Defendant must maintain an administrative grievance and appeal process. A plaintiff who fails to exhaust his administrative remedies waives his right to judicial review and the state claim fails. See N.C.G.S. ¶ 126-34.1 (containing exhaustive list of personnel matters subject to contested case hearings under the state Administrative Procedure Act); and Citizens for Responsible Road-Ways v. N.C. Dept. Of Transportation., 145 N.C. App. 497, 550 S.E.2d 253 (2001).

It is undisputed that at all relevant times the County's Policy and Procedural Manual set forth a grievance procedure as Plaintiff's remedy to challenge the County's compensation practices, and that the Plaintiff never filed a grievance (or any other administrative proceeding) regarding his compensation. Accordingly, the Plaintiff has clearly forfeited the only basis available to challenge his pay under the SPA. See N.C.G.S. § 126.34.1 (claims under the SPA that may be appealed must first be filed as "contested cases" in the state Office of Administrative Hearings); N.C.G.S. § 126.34.1(a)(2), 126-38; and Citizens for Responsible Roadways v. N.C. Dep't of Transp. 145 N.C. App. at 500.

Even had the Plaintiff pursued his administrative remedies, however, the undisputed facts support the Defendant's contention that it did not discriminate against the Plaintiff. The Defendant's pay records for Plaintiff from 1999 through the present reflect that he received annual merit increases and that Defendant paid Plaintiff a non-discriminatory hourly wage throughout his tenure with the County. Indeed, since December 2005, Plaintiff has been the highest paid employee in his position.

For these reasons, and the additional reasons stated in the discussion of the Plaintiff's federal claims, summary judgment must and will also be granted on this final claim.

### III.  ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1.  The "Defendants' Motion for Summary Judgment"  (document #18) is **GRANTED**; and the Complaint is hereby **DISMISSED WITH PREJUDICE**.

2.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

Signed: September 12, 2006

_Carl Horn, III_
_____
Carl Horn, III
United States Magistrate Judge